[Cite as *State v. Williams*, 2012-Ohio-5256.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 11 JE 7 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| RASSOL WILLIAMS aka | ) | |
| RASOOL HASSAN WILLIAMS | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from the Court of
                              Common Pleas of Jefferson County,
                              Ohio
                              Case No. 10 CR 62

JUDGMENT:                     Affirmed.

APPEARANCES:

For Plaintiff-Appellee:        Atty. Jane M. Hanlin
                               Prosecuting Attorney
                               Jefferson County Justice Center
                               16001 State Route 7
                               Steubenville, Ohio  43952

For Defendant-Appellant:       Atty. Kristopher M. Haught
                               Scarpone & Associates
                               2021 Sunset Blvd.
                               Steubenville, Ohio  43952

JUDGES:

Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

                               Dated:  November 6, 2012

WAITE, P.J.

**{¶1}** Appellant Rassol Hassan Williams has appealed his convictions for murder and having a weapon while under a disability. The crime arose while Appellant was having an argument with the victim, Charles King, in Steubenville. While they were arguing Appellant shot King multiple times, resulting in King's death. Appellant was sentenced to life in prison with an opportunity for parole after 20 years. Appellant argues that the court should have given a jury instruction on voluntary manslaughter. However, Appellant pursued a theory of self-defense at trial, which is generally incompatible with a theory of voluntary manslaughter. The court was correct in giving only an instruction on self-defense. Further, there was no evidence that Appellant experienced a sudden fit of passion or rage, which is necessary before an instruction on voluntary manslaughter can be given. Appellant also argues that his conviction is against the manifest weight of the evidence, primarily the evidence dealing with self-defense. The record shows that King walked away from the argument, after which Appellant pursued him and taunted him. When King turned around and approached Appellant, he shot him. Appellant then went into his home, came out again, returned to the victim, and shot him a few more times. This evidence does not support a theory of self-defense and certainly does not support reversal based on the manifest weight of the evidence. The judgment of the trial court is correct and is affirmed.

**{¶2}** At 7:20 a.m. on April 20, 2010, Appellant and Charles King were having an argument outside of Appellant's occasional residence at 234 North Eighth Street in Steubenville, Ohio. The home is owned by Kathryn Taylor, an aunt of Appellant's

girlfriend. A neighbor, Ronald May, heard and observed the argument. He saw King walk away while Appellant taunted him. King then turned around and approached Appellant. At this point, Appellant shot King a number of times. King fell to the ground screaming in pain. May saw Appellant leave the victim and enter 234 North Eighth Street. He saw Appellant "messing with his gun" in some way while he was in the house. (Tr., p. 264.) Appellant then came back out of the house and walked up to King, who was still screaming. Appellant looked at the victim and said "[y]eah, now what?" (Tr., p. 264.) Appellant then shot him a few more times. King soon died from the gunshot wounds. May watched Appellant go back into the house, then run out of the house a few minutes later, fleeing down an alley.

{¶3} Appellant's girlfriend, Sabrina Isaac, later picked up Appellant in Steubenville and took him to Steubenville Municipal Court where he was scheduled to appear on another, unrelated offense. After the court appearance, Appellant fled Steubenville. Appellant was captured in New Rochelle, New York, twenty-eight days later.

{¶4} Another neighbor, Bethlum Frye, witnessed the murder from across the street. He was awakened by the sounds of arguing. He looked out of his window and saw King stumbling and falling in the street after being shot. Frye called 911. When police arrived, King was barely alive, unarmed, and unable to speak. The autopsy later revealed that he was shot five times, and two of the shots were fatal. The bullets used in the shooting were .380 caliber full metal jacket rounds. A box of

those same bullets was later found in Appellant's home with his fingerprint on the box. The murder weapon was not recovered.

{¶5}   Appellant was indicted on May 26, 2010.  He was represented by retained counsel.  Jury trial began on March 14, 2011.  The state called 22 witnesses.  Appellant testified in his own defense but did not call any other witnesses.

{¶6}   Appellant testified that he graduated from high school in New Rochelle, New York in 1995.  He had seven children by five different women.  His girlfriend Sabrina Isaac was the mother of one those children.  He would come to Steubenville to visit Sabrina and his child, and sometimes stayed at her aunt's house at 234 North Eighth Street.

{¶7}   Appellant described a number of arguments he had with the victim in the months leading up to the shooting.  King accused Appellant of trying to strike up a relationship with King's girlfriend, Laceya Lavender.  Appellant said that King threatened to "burn" him for talking to Laceya, which Appellant interpreted as meaning that King would shoot him.  (Tr., p. 759.)  Appellant testified that in two of the arguments, King had shown Appellant a gun.  Appellant testified that he was "fearful" of King.  (Tr., p. 767.)  He testified that he was just protecting himself when he shot King.  (Tr., p. 792.)  Appellant also testified that he never told anyone about these incidents in which King threatened him with a gun, and never reported the incidents to the police.

{¶8}   The jury found Appellant guilty of both counts, along with the firearm specification, on March 18, 2011.  The court held the sentencing hearing immediately

after the jury was dismissed. The court sentenced Appellant to life in prison with the possibility of parole after 15 years for the murder charge, with an additional mandatory 3 years in prison for the gun specification, and 2 years in prison for the charge of having a weapon while under a disability, all to be served consecutively. The total sentence was life in prison with the possibility of parole after 20 years. This appeal followed.

<u>ASSIGNMENT OF ERROR NO. 1</u>

THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE

MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT

SUPPORTED BY SUFFICIENT EVIDENCE.

**{¶9}** Appellant contends that his conviction for murder is against the manifest weight of the evidence because he proved the elements of the affirmative defense of self-defense. The record does not support Appellant's argument.

**{¶10}** "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.' " (Emphasis sic.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A conviction will only be reversed as against the manifest weight of the evidence in exceptional circumstances. *Id.* When determining whether a criminal judgment is against the manifest weight of the evidence, a reviewing court acts as a "thirteenth juror" to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717

(1983). The verdict is not against the weight of the evidence when the record contains evidence which, if believed, will convince the average person of the accused's guilt beyond a reasonable doubt. *State v. Eley*, 56 Ohio St.2d 169, 172, 383 N.E.2d 132 (1978).

{¶11} A reviewing court will normally defer to the credibility determinations of the trial court because the trier of fact is in a position to personally view the demeanor, voice inflections and gestures of the witnesses. *State v. Hill*, 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). "When there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99 CA 149, 2002-Ohio-1152, ¶13, citing *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999).

{¶12} Appellant is arguing that the jury lost its way regarding the question of whether he acted in self-defense. Self-defense is an affirmative defense, and thus, the accused has the burden to prove it by a preponderance of the evidence. *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 124, 679 N.E.2d 1099 (1997). To establish self-defense, a defendant must prove the following elements: (1) the defendant was not at fault in creating the situation giving rise to the affray; (2) the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3)

the defendant did not violate any duty to retreat or avoid the danger. *State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979), paragraph two of the syllabus.

**{¶13}** Since self-defense is an affirmative defense, and given that a jury is free to believe some, all or none of the testimony of any witness, the mere existence in the record of the elements of self-defense does not mean the jury was required to believe that evidence. A reviewing court may affirm the conviction for the simple reason that the jury did not believe the testimony regarding self-defense. *See State v. Griffin*, 7th Dist. No. 01 CA 151, 2002-Ohio-6900, ¶23-25.

**{¶14}** The first element of self-defense is that the defendant was not at fault in creating the situation leading to the affray. Appellant selectively quotes from Mr. May's testimony in an attempt to show that Appellant was not at fault. This attempt is not persuasive. May testified that King was walking away from Appellant at some point during the argument, and that King said he was done with the argument. (Tr., pp. 261-262.) May testified that Appellant responded that he was not done with the argument. Appellant walked over to King and continued to yell obscenities. (Tr., p. 262.) They walked away from 234 North Eighth Street and went in the direction of a local store. At this point, King decided to leave Appellant, but then turned around and starting walking back toward him. (Tr., p. 262.) At that point, Appellant fired the first shots. Appellant then entered the residence at 234 North Eighth Street, "messed" with his gun in some way, and came out again and walked up to the wounded victim, who was screaming in pain. Appellant taunted King by saying "[y]eah, now what?" and then shot him a few more times. (Tr., p. 264.) May did not

see King holding a gun at any point during the altercation, nor was any other physical evidence presented to indicate the presence of a second gun.

{¶15} This evidence reveals that Appellant was at fault by continuing and escalating the argument after King had already walked away. Thus, the first element of self-defense is not met. Even if the evidence could possibly be interpreted as self-defense with respect to the first shots, there is absolutely no evidence that self-defense could have played any role in the second series of shots. Appellant returned to the unarmed victim, who was screaming in pain, then taunted him and took shots at him until he stopped screaming. (Tr., p. 264.) This describes a cold-blooded murder rather than a shooting in self-defense.

{¶16} Regarding the second element of self-defense (did the defendant have a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force), Appellant primarily relies on his own testimony to prove the point. His version of the events is not corroborated by any other witness. He testified that King attacked him and hit him over the head with a gun while Appellant was on his porch. Appellant then ran upstairs, found a gun, and waited until he heard King leave the house. He "tiptoed" downstairs to lock the front door, but before he got there, King came back in "with the gun on his leg". (Tr., p. 773.) Appellant pointed his own gun at King and forced King to back up a few steps out the front door. He then thought he saw King pull the trigger, so he turned and ran back into the house, firing behind him as he ran. He kicked the door closed after he was in the house. He testified that he went back

outside to look at King, who was now unarmed. (Tr., p. 775.) Appellant claims that another man named Lloyd was now with King, and Lloyd turned around and starting shooting at Appellant, so Appellant started shooting back. Appellant speculated that King might have been shot by his "partner" named Lloyd. (Tr., p. 848.)

{¶17} On cross-examination, the prosecutor established that Appellant's testimony was inconsistent with all the other evidence in the case, including the evidence of the other eyewitnesses. The prosecutor tried to get Appellant to explain why the shell casings were found far away from where Appellant stated he fired the gun, and he responded by speculating that the casings had been moved. (Tr., p. 845.) Appellant also had no explanation why there were no other casings, bullets, or other evidence found to support his theory that another gun was fired by the victim's friend, Lloyd.

{¶18} Appellant's contradictory and inconsistent testimony is not credible. The jury plainly did not believe his testimony, and without such belief there was no basis on which to consider a theory of self-defense. Appellant's first assignment of error is without merit and is overruled.

## ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED IN NOT PROVIDING A JURY
INSTRUCTION FOR MANSLAUGHTER.

{¶19} Appellant contends that he was entitled to a jury instruction on voluntary manslaughter and that the failure to give the instruction was reversible error requiring a new trial. Appellant is incorrect.

**{¶20}** Murder is defined as "purposely caus[ing] the death of another." R.C. 2903.02(A). In contrast, voluntary manslaughter is defined as knowingly causing the death of another "while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force." R.C. 2903.03(A).

**{¶21}** Voluntary manslaughter is an inferior degree offense of murder, rather than a lesser included offense. *State v. Kanner*, 7th Dist. No. 04 MO 10, 2006-Ohio-3485, ¶17. This is true because the elements of the crime of voluntary manslaughter are contained within the offense of murder, except for one or more additional mitigating elements. *Id.*

**{¶22}** For a court to include an instruction on the inferior degree offense of voluntary manslaughter, the evidence presented at trial must "reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter." *State v. Lewers*, 5th Dist. No.2009 CA 00289, 2010-Ohio-5336, ¶100, citing *State v. Shane*, 63 Ohio St.3d 630, 632, 590 N.E.2d 272 (1992). Where insufficient evidence of provocation is presented and no reasonable jury could decide that the defendant was reasonably provoked by the victim, then no instruction on voluntary manslaughter can be given. *Id.* at 638.

**{¶23}** An appellate court reviews a trial court's decision whether to give a particular jury instruction under an abuse of discretion standard. *State v. Kaufman*, 187 Ohio App.3d 50, 2010-Ohio-1536, 931 N.E.2d 143, ¶103. An abuse of discretion

connotes more than an error of judgment; it implies an attitude on the part of the court that is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

**{¶24}** Appellee correctly points out that an instruction on voluntary manslaughter is generally incompatible with and contradictory to a defense of self-defense. *See, e.g, State v. Marcum*, 7th Dist. No. 04 CO 66, 2006-Ohio-7068, ¶46 ("a self-defense theory is usually contradictory to proof of sudden passion or rage.") Fear is insufficient to demonstrate the emotional states of sudden passion or a fit of rage, and these latter emotional states are essential elements of the definition of voluntary manslaughter. *Kanner*, *supra*, ¶51-53. Appellant's own testimony at trial was that he was afraid of the victim, not that he was overcome by sudden passion or a fit of rage. (Tr., pp. 767, 769, 776.) There is nothing in the record indicating any type of sudden passion or fit of rage from Appellant. Appellant's theory on appeal appears to be that the victim was enraged because he thought Appellant was becoming involved with the victim's girlfriend. However, voluntary manslaughter requires proof that the defendant, not the victim, acted out of a fit of sudden passion or rage. No such evidence appears in this record. Appellant's second assignment of error is without merit and is overruled.

**{¶25}** In conclusion, the manifest weight of the evidence supports the convictions. Appellant admitted in his own testimony that he shot at the victim, and his inconsistent theory of self-defense, based almost exclusively on his own testimony, contradicts all of the other evidence in the case. Appellant was not

entitled to an instruction on voluntary manslaughter because there was no evidence that he acted in a sudden passion or sudden fit of rage provoked by the victim. Appellant pursued a theory of self-defense at trial, which is usually contradictory to a theory of voluntary manslaughter. Appellant only testified that he was afraid of the victim, and fear does not rise to the level necessary to support a charge on voluntary manslaughter. Appellant's two assignments of error are overruled and his convictions and sentence are affirmed.

Vukovich, J., concurs.

DeGenaro, J., concurs.