OPINION
{¶ 1} Defendant-appellant, Randall Bennett, appeals his conviction, following a jury trial, and sentence in the Mahoning County Common Pleas Court for felonious assault.
 {¶ 2} On December 29, 2002, appellant and Michael Yeany (Yeany) were involved in an altercation in the parking lot outside the Casaloma bar located in Youngstown, Ohio. Appellant punched Yeany in the face causing him to fall to the ground unconscious. Yeany suffered a skull fracture and laceration on his face. Yeany's injuries required a five-day hospitalization. Appellant was later arrested and gave a statement to police.
 {¶ 3} On January 30, 2003, a Mahoning County grand jury indicted appellant on one count of felonious assault in violation of R.C. 2903.11(A)(1), a second-degree felony. After lengthy and numerous pre-trial matters, the case proceeded to a jury trial and appellant was found guilty. On July 15, 2004,[1] the trial court sentenced appellant to four years in prison. This appeal followed.
 {¶ 4} Appellant's first assignment of error states:
 {¶ 5} "THE TRIAL COURT ERRED WHEN IT SENTENCED THE DEFENDANT TO MORE THAN THE RELEVANT STATUTORY MINIMUM FOR A FIRST TIME OFFENDER"
 {¶ 6} Appellant argues that Ohio's sentencing statutes which require the judge to make factual findings that are not submitted to the jury or admitted by the defendant that increase the defendant's sentence beyond the "relevant statutory maximum" violate the Sixth Amendment to the U.S. Constitution and the United State's Supreme Court decision of Blakely v. Washington
(2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403. Appellant's argument also implicates the Supreme Court's decision in Apprendi v. New Jersey, (2000), 530 U.S. 466,120 S.Ct. 2348, 147 L.Ed.2d 435.
 {¶ 7} In this case, appellant was convicted of one count of felonious assault, a second-degree felony. For second-degree felonies, the sentencing court may impose a prison term of two, three, four, five, six, seven, or eight years. R.C.2929.14(A)(2). The trial court sentenced appellant to a four-year term of imprisonment.
 {¶ 8} In its judgment entry of sentence, the trial court made the requisite findings to impose more than the minimum term of imprisonment for the offenses. The trial court found that the shortest terms of imprisonment would demean the seriousness of appellant's conduct and would not adequately protect the public from future crime by the appellant under R.C. 2929.14(B).
 {¶ 9} While this appeal was pending, the Ohio Supreme Court held that the provisions of the Revised Code relating to nonminimum (R.C. 2929.14[B]), maximum (R.C. 2929.14[C]), and consecutive sentences (R.C. 2929.14[E][4]) are unconstitutional because they require a judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant before imposition of a sentence greater than the "statutory maximum." State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856,845 N.E.2d 470, paragraphs one and three of the syllabus. (Apprendiv. New Jersey (2000), 530 U.S. 466, 120 S.Ct. 2348,147 L.Ed.2d 435; Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531, 159 L.Ed.2d 403; and United States v. Booker (2005),543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621, followed.)
 {¶ 10} The Court went on to hold that those unconstitutional provisions could be severed. Id., paragraphs two and four of the syllabus. Since the provisions could be severed, "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id., paragraph seven of the syllabus.
 {¶ 11} Here, since the trial court's imposition of a more than minimum sentence was based on R.C. 2929.14(B), which has been found unconstitutional in Foster, appellant's sentence must be reversed accordingly.
 {¶ 12} After State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, 845 N.E.2d 470, the trial court no longer needs to give reasons or findings prior to imposing maximum, consecutive and/or more than minimum sentences. The Court held that:
 {¶ 13} "These cases and those pending on direct review must be remanded to trial courts for new sentencing hearings not inconsistent with this opinion. We do not order resentencing lightly. Although new sentencing hearings will impose significant time and resource demands on the trial courts within the counties, causing disruption while cases are pending on appeal, we must follow the dictates of the United States Supreme Court. Ohio's felony sentencing code must protect Sixth Amendment principles as they have been articulated.
 {¶ 14} "Under R.C. 2929.19 as it stands without (B)(2), the defendants are entitled to a new sentencing hearing although the parties may stipulate to the sentencing court acting on the record before it. Courts shall consider those portions of the sentencing code that are unaffected by today's decision and impose any sentence within the appropriate felony range. If an offender is sentenced to multiple prison terms, the court is not barred from requiring those terms to be served consecutively. While the defendants may argue for reductions in their sentences, nothing prevents the state from seeking greater penalties.United States v. DiFrancesco (1980), 449 U.S. 117, 134-136,101 S.Ct. 426, 66 L.Ed.2d 328."
 {¶ 15} The same day Foster was decided, the Ohio Supreme Court decided a companion case. State v. Mathis,109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1. In Mathis, the Court clarifiedFoster adding:
 {¶ 16} "Although after Foster, the trial court is no longer compelled to make findings and give reasons at the sentencing hearing since R.C. 2929.19(B)(2) has been excised, nevertheless, in exercising its discretion the court must carefully consider the statutes that apply to every felony case. Those include R.C.2929.11, which specifies the purposes of sentencing, and R.C.2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender. In addition, the sentencing court must be guided by statutes that are specific to the case itself."
 {¶ 17} Accordingly, appellant's first assignment of error is with merit.
 {¶ 18} Appellant's second assignment of error states:
 {¶ 19} "THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSE OF ASSAULT"
 {¶ 20} Appellant argues here that the jury instructions were deficient because they did not instruct as to the lesser included or inferior degree offense of assault. In State v. Deem (1988),40 Ohio St.3d 205, 533 N.E.2d 294, paragraph three of the syllabus, the Ohio Supreme Court set out the test used to determine whether one offense constitutes a lesser included offense of another:
 {¶ 21} "An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense."
 {¶ 22} An inferior degree offense is one in which, "its elements are identical to or contained within the indicted offense, except for one or more additional mitigating elements." Id. at paragraph two of the syllabus.
 {¶ 23} The decision to give or refuse to give jury instructions is within the sound discretion of the trial court and will not be disturbed on appeal unless the record affirmatively demonstrates an abuse of discretion on the facts and circumstances of the particular case. State v. Wolons
(1989), 44 Ohio St.3d 64, 68, 541 N.E.2d 443. "`Abuse of discretion' means unreasonable, arbitrary, or unconscionable."State ex rel. Cranford v. Cleveland, 103 Ohio St.3d 196,2004-Ohio-4884, 814 N.E.2d 1218, ¶ 24.
 {¶ 24} "A criminal defendant has a right to expect that the trial court will give complete jury instructions on all issues raised by the evidence." State v. Williford (1990),49 Ohio St.3d 247, 251, 551 N.E.2d 1279. Jury instructions should be tailored to fit the facts of each case. Avon Lake v. Anderson
(1983), 10 Ohio App.3d 297, 299, 10 OBR 472, 462 N.E.2d 188.
 {¶ 25} The crime of felonious assault, a second degree felony, is defined in R.C. 2903.11 as:
 {¶ 26} "(A) No person shall knowingly:
 {¶ 27} "(1) Cause serious physical harm to another[.]"
 {¶ 28} Simple assault, a first degree misdemeanor, is defined in R.C. 2903.13 as:
 {¶ 29} "(A) No person shall knowingly cause or attempt to cause physical harm to another.
 {¶ 30} "(B) No person shall recklessly cause serious physical harm to another."
 {¶ 31} Simple assault is a lesser included offense of felonious assault. State v. Hartman (1998),130 Ohio App.3d 645, 647, 720 N.E.2d 971. "[A jury] charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense."State v. Thomas (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of syllabus.
 {¶ 32} An instruction on simple assault would be warranted if the jury could reasonably find that appellant recklessly, rather than knowingly, caused serious physical harm; or that he knowingly caused or attempted to cause mere physical harm, rather than serious physical harm. All of the relevant terms are defined in Ohio's criminal code.
 {¶ 33} The mens rea for felonious assault is "knowledge." This is defined in R.C. 2901.22(B) as:
 {¶ 34} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 35} The test for determining whether a defendant acted knowingly is a subjective one, based on the knowledge, beliefs and circumstances of the individual defendant. State v. Elliott
(1995), 104 Ohio App.3d 812, 821, 663 N.E.2d 412.
 {¶ 36} The mens rea for simple assault is either "knowledge," as defined above, or "recklessness" defined in R.C. 2901.22(C) as:
 {¶ 37} "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."
 {¶ 38} "Serious physical harm to persons" is defined in R.C.2901.01(A)(5) as any of the following:
 {¶ 39} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 {¶ 40} "(b) Any physical harm that carries a substantial risk of death;
 {¶ 41} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 42} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 {¶ 43} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 44} "Physical harm to persons" is defined in R.C.2901.01(A)(3) as:
 {¶ 45} "[A]ny injury, illness, or other physiological impairment, regardless of its gravity or duration."
 {¶ 46} In this case, appellant does not appear to contest the fact that the alleged victim, Yeany, suffered serious physical harm. He acknowledges punching Yeany at least once and it is undisputed that Yeany was hospitalized for five days with a fractured skull. Rather appellant argues that "a reasonable jury could have acquitted him of felonious assault because it is not clear that he was aware that a few punches, and possibly a kick, would certainly or likely result in the type of serious injury which occurred." (Appellant's Brief, p. 18.) In other words, appellant argues that he did not have the requisite mens rea, or state of mind, for a conviction for felonious assault. He maintains that the jury could have viewed his state of mind as recklessness, not knowingly, thus supporting an instruction for simple assault.
 {¶ 47} Appellee responds that under no reasonable view of the evidence could a jury find appellant not guilty of felonious assault and guilty of only simple assault. Appellee highlights the extent of Yeany's injuries and argues that a jury could not have reasonably concluded that those injuries were the result of appellant being in a reckless state of mind.
 {¶ 48} Appellant acknowledged to police and at trial that he punched Yeany in the face. At trial, appellant explained that he was a passenger in a car parked to the left of Yeany's vehicle in the parking lot of the bar. Appellant claimed that when he tried to get out of the car to confront Yeany, Yeany pushed the door back. He explained further, as follows:
 {¶ 49} "A The doors between Mr. Yeany and I, I — I don't say nothing at this point. In my mind, he assaulted me, my legs, my shins. I don't know if you ever been kicked in the shin before. It's not a pleasant feeling. The feeling lasts for a couple seconds. But when you get kicked in the shin, it's some pain.
 {¶ 50} "I jumped out of the car, the door's between us. I shut the door, he takes a step toward me, I hit him (indicating). Maybe he stumbled back for a second, but in my recollection, it was more of an (indicating). He hits the ground. Now, upon hitting the ground, I do crouch over top of him. I grab him by the shirt, I lift him off the ground, and I do (indicating), I cock back.
 {¶ 51} "Q Was he moving?
 {¶ 52} "A Not at this time, but when I grabbed his shirt and cocked back, this is all within five seconds here. It's boom, boom, he hits the ground, I grab him, I cock back, I look at him in his face, and his eyes are open, but there's no response like in his eyes. You can see — I can see now that he is knocked out at this time. * * *
 {¶ 53} "Q Do you remember where you hit him?
 {¶ 54} "A This vicinity (indicating). I mean, maybe eye, mouth. I mean . . .
 {¶ 55} "Q You're pointing to the left side of your head, and you're a lefty?
 {¶ 56} "A Right. Yeah. Right. Well, it would be — it would be the opposite side of me, because he's facing me, but this side of his body (indicating). I'm left-handed.
 {¶ 57} "Q Are you certain you struck him with your left hand?
 {¶ 58} "A I'm absolutely positive.
 {¶ 59} "Q You certain you struck him twice?
 {¶ 60} "A I'm positive. * * *" (Tr. 705-706.)
 {¶ 61} Appellant attempts to analogize his case with another decided by this Court in State v. McCleod (Dec. 12, 2001), 7th Dist. No. 00 JE 8. In that case, the defendant "sucker-punched" the victim in response to an alleged racial epithet and was subsequently convicted by a jury of felonious assault. There, we determined that such a punch was more likely an act of recklessness and, therefore, justified an instruction on simple assault.
 {¶ 62} This case is distinguishable from McCleod. To deliver a "sucker punch" is "to punch (a person) suddenly without warning and often without apparent provocation." Webster's Tenth Collegiate Dictionary (1998), 1176. Clearly, in this case, it would not be reasonable to characterize appellant's attack on Yeany as a "sucker punch." Appellant grabbed Yeany by his shirt with one hand and struck him, not only once as in McCleod, buttwice in the face with his other, causing him serious physical harm.
 {¶ 63} Additionally, appellant focuses entirely on his state of mind, ignoring how evidence of the extent of harm caused to the victim can illustrate the state of the mind of the attacker. As the Eleventh District Court of Appeals observed in State v.Bucci, 11th Dist. No. 2001-L-091, 2002-Ohio-7134, at ¶ 23, since appellant admitted to intentionally punching Yeany in the face, "it is necessary to focus on the crucial distinction between felonious assault and assault with regard to the harm element in determining whether the evidential table in this case required the trial court to honor appellant's request to also instruct the jury on the crime of assault."
 {¶ 64} Appellant struck Yeany with such force that he caused him to suffer a fractured skull and rendered him unconscious. Also, the blows were with such force that it caused lacerations to Yeany's face and caused one of his teeth to puncture through his cheek. Given this alone, it cannot be said that a reasonable jury would have found appellant's state of mind to be that of recklessness and, therefore, support a conviction for simple assault. Additionally, it should be noted that Yeany suffered permanent scars and continues to suffer from dizziness and partial immobility in one hand. In sum, the trial court did not abuse its discretion in declining to instruct on the lesser included offense of assault based on the evidence presented in this case.
 {¶ 65} Accordingly, appellant's second assignment of error is without merit.
 {¶ 66} The judgment entry of sentence of the trial court is hereby reversed and this matter remanded for resentencing consistent with State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, 845 N.E.2d 470.
Vukovich, J., concurs.
DeGenaro, J., concurs.
[1] Although the judgment entry of sentence refers to the sentencing as occurring on July 15, 2004, the entry itself is file-stamped July 27, 2004.