[Cite as *State v. Jefferson*, 2012-Ohio-2387.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 97331

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DAVID L. JEFFERSON

DEFENDANT-APPELLANT

---

## JUDGMENT:
## REVERSED AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-526072

**BEFORE:** Blackmon, A.J., Boyle, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** May 31, 2012

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
Leader Building, Suite 940
526 Superior Avenue
Cleveland, Ohio 44114

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

Erica Barnhill
Gregory Mussman
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, A.J.:

{¶1} Appellant David L. Jefferson appeals his convictions and assigns the following errors for our review:

> **I. The trial court erred in denying appellant's motion for acquittal as to the charges when the state failed to present sufficient evidence against appellant.**
>
> **II. Appellant's convictions are against the manifest weight of the evidence.**
>
> **III. The trial court erred in instructing the jury on the lesser included offense of voluntary manslaughter as this honorable court has previously held that an instruction on voluntary manslaughter and self defense is not possible because the two legal theories are incompatible.**
>
> **IV. The trial court erred in instructing the jury on the lesser included offense of voluntary manslaughter when there was no evidence of sudden passion or fit of rage on the part of the appellant.**
>
> **V. The trial court erred in sentencing appellant when it began the sentencing hearing without Appellant's attorneys present in violation of appellant's constitutional rights.**

{¶2} Having reviewed the record and pertinent law, we reverse Jefferson's convictions and remand for a new trial. The apposite facts follow.

{¶3} On June 20, 2009, Jefferson shot and killed 21-year-old Trenton Austin in an alley near East 33rd Street and Cedar Avenue in Cleveland, Ohio. At the time of the fatality, Jefferson had approached the alley and discovered Austin engaged in a sexual encounter with Carlyeliea Benson, a prostitute. Three days later, Jefferson turned himself in to police, took responsibility for the killing, and claimed he acted in self-defense.

**{¶4}** On June 26, 2009, the Cuyahoga County Grand Jury indicted Jefferson on one count of aggravated murder with one - and three-year firearm specifications. Jefferson pleaded not guilty at his arraignment, numerous pretrials followed, and the matter proceeded to trial. However, the jury was unable to reach a verdict and the trial court declared a mistrial. On July 25, 2011, a new trial commenced.

## Second Jury Trial

**{¶5}** Most of the facts are not in dispute. As previously noted, Jefferson turned himself in to police three days after the shooting, admitted that he shot and killed Austin, but claimed he did so in self-defense. As such, we will limit our discussion of the facts primarily to the respective versions of the shooting.

**{¶6}** At the trial, the state presented the testimony of nine witnesses, including 21-year-old Benson, who testified that she has been a prostitute since she was 14. According to Benson, a mutual friend referred Austin to her; that friend contacted her and made arrangements for them to meet. In the early morning hours of June 20, 2009, Austin arrived at her sister's apartment, and Benson agreed to have sex with him for $30.

**{¶7}** Austin drove Benson to an alley about 20 blocks away, and they began having sex in the back passenger's compartment of the car. Benson and Austin remained quiet in order not to draw any attention to the vehicle. A short time later, Austin whispered that someone was approaching the vehicle, pushed Benson down to hide her, and reached under the driver's seat for what Benson later learned was a stun gun.

**{¶8}** The individual approached the driver's door and Austin asked what he wanted. Jefferson indicated that he wanted to watch. Laughingly, Austin asked Jefferson whether he knew where to get some "blow." Austin exited the vehicle, walked around to the front of the car, and had a brief conversation with Jefferson. Jefferson then walked away across a field in the direction of the Shell gas station at East 30th Street and Carnegie Avenue.

**{¶9}** Austin and Benson watched as Jefferson disappeared across the field, and then they resumed having sex. Moments later, Jefferson returned and stood in front of the vehicle and sipped a soda. Austin again exited the vehicle, walked around to the front, and the two engaged in a short conversation, after which Austin asked Benson to hand him his cell phone. Austin entered some numbers and handed the phone back to Benson and continued talking with Jefferson.

**{¶10}** Benson got dressed and decided it was time for Austin to take her back to her sister's apartment. As Austin and Jefferson continued to talk, Benson went to sit in the front seat. At this time, Benson was able to get a good look at Jefferson, who she described as disheveled, with bloodshot eyes, and who appeared to be under the influence of drugs.

**{¶11}** As Benson sat in the front seat waiting for Austin, she saw blue lights floating across the windshield. Benson saw Jefferson with Austin in a choke hold, and Austin was shouting: "get the f**k off me." Both men fell to the ground out of her field of vision, and then Benson heard gunshots.

**{¶12}** Upon hearing the gunshots, Benson exited the car, fled up East 33rd Street, and stopped in front of a house where a party was in progress. Benson waited for a short period in the hopes that Austin's car would emerge from the alley, but it never did. Being too scared to return to the scene, Benson went around the block to a nearby school, where she could peer into the alley from a distance.

**{¶13}** Upon looking in the alley, Benson discovered that Austin's car doors and trunk were now opened, and the headlights were now illuminated. Benson called out for Austin, but received no response, and then saw Austin's body partially hanging out of the driver's door. Benson later observed a male figure exiting the vehicle, but due to the distance, could not ascertain if it was Jefferson.

**{¶14}** Benson returned to the house where the party was still in progress and pleaded with a man, who was sitting outside, to accompany her to the alley. The man, Leon Johnson, returned with Benson to the alley. Johnson flipped Austin over, told Benson to call 911, and attempted CPR, but to no avail.

**{¶15}** Benson testified that when the police first arrived, she was not forthcoming about her involvement for fear of being prosecuted for prostitution. Benson initially told the police that she had exited the car and went over to an adjacent U-Haul lot, while Austin and Jefferson were arguing, and before any shots were fired. Later, Benson indicated that she never actually left the car until after the shooting occurred.

**{¶16}** Thirty-two-year-old Jefferson took the stand in his own defense. According to Jefferson, he left his home 2:30 a.m. on June 20, 2009, intending to travel to

his real estate office at East 36th Street and Euclid Avenue.  Jefferson intended to make copies of a flier detailing the first-time home buyer's program, then in effect, and pass them out to patrons as they left the various after-hours clubs in the area.

{¶17}  Jefferson claims that as he was passing East 33rd Street, he heard the scream of a woman coming from the alley.  Jefferson exited his vehicle and approached a car parked in the alley.  Jefferson spoke with Austin, asked if everything was okay, and Austin indicated everything was fine.  Jefferson then walked to a nearby Shell gas station to gather his thoughts.

{¶18}  Jefferson purchased a beverage, but felt something was not right, so he returned to the alley.  Jefferson approached the parked car a second time and began speaking with Austin.  Jefferson claims that he was having a cordial conversation with Austin, who inquired about rental properties, and as he turned to walk away, Austin put him in a choke hold.  A struggle ensued and Austin tried to shock him with the stun gun.  Jefferson then discharged his firearm hitting Austin three times.

{¶19}  After shooting Austin, Jefferson ran to his car, but could not get in, because he could not locate the key.  Jefferson then ran to his office, washed the blood off his face, and returned to the scene of the crime, where he found the key to his car. Jefferson later traveled home, placed all his clothing along with the gun in a garbage bag, and proceeded to call the non-emergency number for Cleveland's police department. Jefferson hung up the phone before speaking.

{¶20}   During cross-examination, Jefferson was presented with his cellular telephone log from the night in question, which revealed that he had made approximately 14 telephone calls to seedy motels on the east side of Cleveland between 1:30 a.m. and 2:30 a.m.   When asked what were the purpose of these calls, Jefferson stated that he was looking for someone named Anthony who was supposed to assist him with passing out the fliers.   Jefferson did not know Anthony's last name.

{¶21}   Finally, Jefferson admitted on cross-examination that despite claiming to have approached the alley after hearing a woman scream, he figured out why Austin and Benson were in the alley.   Jefferson also admitted that he   never thought to ask Benson if she was okay.

{¶22}   The jury found Jefferson guilty of voluntary manslaughter and the firearm specifications.   On September 13, 2011, the trial court sentenced Jefferson to prison terms of four years for voluntary manslaughter and three years for the firearm specification.

## Jury Instructions

{¶23}   We begin with the third assigned error, which disposes of the instant appeal.   Jefferson argues the trial court erred in instructing the jury on the lesser included offense of voluntary manslaughter.

{¶24}   The decision to give or refuse to give jury instructions is within the sound discretion of the trial court and will not be disturbed on appeal unless the record affirmatively demonstrates an abuse of discretion on the facts and circumstances of the

particular case. *State v. Bennett*, 7th Dist. No. 04-MA-184, 2006-Ohio-3566, at ¶ 23, citing *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989). The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶25}** As previously noted, Jefferson admitted to killing Austin, but claimed he acted in self-defense. Throughout the trial, the defense was steadfast in this theory. The state requested an instruction on the lesser included offense of voluntary manslaughter, Jefferson's defense counsel objected, and the trial court proceeded to give instructions on both voluntary manslaughter and self-defense. The trial court denied Jefferson's objection to the voluntary manslaughter instruction; he has always maintained that the shooting was in self-defense.

**{¶26}** We have previously held that an instruction on voluntary manslaughter and self-defense is erroneous because the two legal theories are incompatible. *State v. Williamson*, 8th Dist. No. 95732, 2011-Ohio-4095, citing *State v. Loyed*, 8th Dist. No. 83075, 2004-Ohio-3961. *See also State v. Brown*, 8th Dist. No. 93007, 2010-Ohio-2460. Voluntary manslaughter requires that the defendant be under the influence of sudden passion or a fit of rage, while self-defense requires the defendant to be in fear for his own personal safety. *State v. Harris*, 129 Ohio App.3d 527, 534-535, 718 N.E.2d 488 (10th Dist.1998).

**{¶27}** Here, the record is devoid of any evidence that Jefferson acted out of sudden passion or rage. Quite the contrary, Jefferson maintained that he feared for his

life because Austin shocked him with the stun gun.   To underscore that he feared for his safety, Jefferson offered the testimony of retired police officer Jim Simone, who testified that an officer's biggest fear when confronted with a stun gun is that the assailant will use the officer's service revolver against him or her.   Because the trial court instructed the jury on voluntary manslaughter, which required a showing that Jefferson acted out of sudden passion or rage, and also instructed them on self-defense, we cannot say that the instruction was harmless or non-prejudicial.

{¶28} However, the state counters that the dual instruction is improper   only when requested by the defense.   In support of this notion, the state cites *State v. Hill*, 108 Ohio App.3d 279, 670 N.E.2d 555 (8th Dist.1996), a case similar to the instant case in that both defendants were charged with murder, both asserted self-defense, both prosecutors requested an instruction on voluntary manslaughter, and both defense counsel objected.

{¶29} In *Hill*, we stated that if the evidence is present, the trial court must charge on both murder and voluntary manslaughter where the circumstances require, even if the defendant objects to the charge.   Unlike *Hill*, in the instant case, there is not a scintilla of evidence to support an instruction on voluntary manslaughter.   As such, an instruction on voluntary manslaughter would be inappropriate.   As previously noted, Jefferson's theory of the case was that he feared imminent danger or harm at the hands of Austin.   In addition, in *Hill* the trial court erroneously stated that it was the defendant who requested the instruction on voluntary manslaughter.

{¶30} In *Hill* we stated:

**As we view the case, the court's instruction that defendant was asserting the voluntary manslaughter defense may have confused the jury into thinking that the defendant would be content with a conviction for that offense. This could well have detracted from the defendant's self-defense argument and tainted the verdict. We cannot say that the improper instruction was harmless or non-prejudicial.**

{¶31} Finally, as we feared in *Hill*, the dual instruction herein appeared to have confused the jury. During jury deliberation, the trial court stated: "The question from the jury says 'If we find the defendant guilty of voluntary manslaughter, do we need to consider self-defense?' We are going to answer that question 'Yes.'" Tr. 1423.

{¶32} The above-quoted excerpt clearly indicates that the jury was confused about the trial court's instructions. Accordingly, under the peculiar circumstances of the instant case, we sustain the third assigned error, reverse Jefferson's convictions, and remand for a new trial.

{¶33} Our disposition of the third assigned error, renders the remaining errors moot. App.R. 12(A)(1)(c).

{¶34} Judgment reversed and remanded for proceedings consistent with this opinion.

It is ordered that appellant recover of appellee his costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____
PATRICIA ANN BLACKMON, ADMINISTRATIVE JUDGE

MARY J. BOYLE, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR