[Cite as *State v. Tubbs*, 2020-Ohio-730.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JERMAINE TUBBS,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 18 MA 0094**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 17CR439

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Paul Gains*, Prosecuting Attorney and *Atty. Ralph Rivera,* Assistant Prosecutor, Mahoning County Prosecutor's Office, 21 West Boardman Street, 6th Floor, Youngstown, Ohio 44503, for Plaintiff-Appellee, and

*Atty. John Juhasz,* 7081 West Boulevard, Suite 4, Youngstown, Ohio 44512, for Defendant-Appellant.

Dated:
February 24, 2020

**DONOFRIO, J.**

{¶1}     Defendant-appellant, Jermaine Tubbs, appeals from a Mahoning County Common Pleas Court judgment convicting him of murder with a firearm specification and having weapons under disability and sentencing him to 21 years to life in prison, following a jury trial on the murder charge and a bench trial on the having weapons under disability charge.

{¶2}     Around midnight on April 10, 2017, Shawnee Jones texted her mother, Sophia Brooks, telling her of a fight between her and her boyfriend, appellant.  At the time, Sophia was in the car with her estranged husband Michael Brooks, Michael's adult son Mikhail Brooks, and Shawnee's young son.  After Sophia received the text, Michael drove them to Shawnee's apartment in Youngstown.

{¶3}     When they arrived at Shawnee's apartment, Michael retrieved his cane from the car and walked up to the front door.  Shawnee and her young daughter came out of the apartment to talk with Michael.  Next, appellant exited the apartment.  Michael and appellant got into a verbal argument.  The argument turned physical when appellant pushed Michael in an attempt to get him to move away from the door.  Michael then began hitting appellant on the legs and ankles with his cane.  Appellant pulled a gun from his waistband and shot Michael twice in the head.  Michael died from the gunshot wounds.

{¶4}     A Mahoning County Grand Jury indicted appellant on one count of murder in violation of R.C. 2903.02(A)(D) with a firearm specification and one count of having weapons under disability, a third-degree felony in violation of R.C. 2923.13(A)(2)(B).

{¶5}     Appellant elected to have the murder count tried to a jury and the having weapons under disability count tried to the court.  The case proceeded to a jury trial on the murder count.  Appellant testified that he shot Michael in self-defense.  The jury found appellant guilty of murder and of the firearm specification.  At the bench trial, the court found appellant guilty of having weapons under disability

{¶6}     The trial court subsequently sentenced appellant to 15 years to life on the murder count and three mandatory years on the firearm specification to be served prior

to and consecutive to the murder sentence. The court also sentenced appellant to three years on the having weapons under disability count to be served consecutive to his other sentences for a total sentence of 21 years to life.

**{¶7}** Appellant filed a timely notice of appeal on September 5, 2018. He now raises three assignments of error.

**{¶8}** We will address appellant's third assignment of error out of order for ease of discussion. Appellant's third assignment of error states:

> APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THEREFORE IS AN AFFRONT TO DUE PROCESS.

**{¶9}** Appellant asserts that his conviction was against the manifest weight of the evidence. He claims the evidence demonstrated that Michael was the aggressor, that Michael would not be deterred, and that Michael was looking to harm him. Additionally, he points out that Sophia told Detective Rodway that she did not see the shooting. Yet she described the shooting in detail at trial.

**{¶10}** In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" *Id.* (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. *Id.* at 390.

**{¶11}** Yet granting a new trial is only appropriate in extraordinary cases where the evidence weighs heavily against the conviction. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). This is because determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts who sits in the best position to judge the weight of the evidence and the witnesses'

credibility by observing their gestures, voice inflections, and demeanor. *State v. Rouse*, 7th Dist. Belmont No. 04-BE-53, 2005-Ohio-6328, ¶ 49, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Thus, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99-CA-149, 2002-Ohio-1152.

{¶12} In order to reverse a jury verdict as against the manifest weight of the evidence, all three judges must concur. *Thompkins*, 78 Ohio St.3d at 389.

{¶13} We must examine the evidence presented at trial in order to determine if the jury's verdict was against the manifest weight of the evidence.

{¶14} Sophia testified that on April 9, 2017, she, Michael, Shawnee, and Shawnee's children were at her house eating and drinking. (Tr. 341-342). Shawnee left Sophia's house between 11:15 and 11:30 p.m. (Tr. 343). Michael and Sophia then left to pick up Mikhail and his girlfriend. (Tr. 344). They dropped Mikhail's girlfriend off around midnight. (Tr. 344). While they were driving, Sophia received a text from Shawnee. (Tr. 345-346). The text prompted her to call 911. (Tr. 346). Sophia stated this was "not the first time we had to call the police with these two [appellant and Shawnee]." (Tr. 345). They then drove to Shawnee's apartment to see what was happening. (Tr. 347).

{¶15} Sophia stated that when they arrived, she remained in the car and Michael walked up to Shawnee's door with his cane. (Tr. 356). She saw Shawnee and her daughter come out. (Tr. 356). Then she saw appellant come out. (Tr. 356). Sophia watched appellant and Michael talking and it appeared to be a heated conversation. (Tr. 357). She then saw appellant do something to Michael. (Tr. 358). Next, Michael hit appellant's ankles with his cane. (Tr. 358-359). Sophia stated that appellant then reached into his waistband and shot Michael twice. (Tr. 359-360). Appellant then ran off. (Tr. 361).

{¶16} Sophia also testified as to Michael's health. She stated that over the years he had suffered a brain aneurysm, a massive stroke, and a heart attack. (Tr. 338). Consequently, Sophia stated, Michael was not an "able-bodied" man. (Tr. 339). He was weak on his left side and used a cane to walk when they went out. (Tr. 339).

Case No. 18 MA 0094

**{¶17}** Shawnee testified that after she left Sophia's house on the night in question, she picked up appellant and they went to her apartment. (Tr. 386-387). She stated that she and appellant got into an argument because she would not let him take her car. (Tr. 390-391). Shawnee then went into the bathroom with her daughter and locked the door. (Tr. 391). From the bathroom, she contacted Sophia and asked her to come over. (Tr. 391). Soon thereafter, Shawnee heard a car horn beep so she and her daughter went outside. (Tr. 392-393).

**{¶18}** Once outside, Shawnee tried to stop Michael from approaching her apartment because she did not want him to get into a fight with appellant. (Tr. 393). She stated that Michael pushed her out of his way and continued up to her apartment. (Tr. 393). Shawnee stated that appellant came outside and he and Michael argued. (Tr. 396). Appellant tried to go back inside, but Michael was holding the door. (Tr. 396). Shawnee heard appellant tell Mikhail to get Michael "out of his face" before he killed him. (Tr. 396). Next, she saw appellant push Michael's head and then saw Michael hit appellant on the leg with his cane. (Tr. 397-399). Shawnee then saw appellant reach for the gun in his waistband. (Tr. 400). She saw appellant hold the gun above his head and shoot Michael twice. (Tr. 400). Shawnee testified that appellant was never on the ground during the altercation and that he was standing when he shot Michael. (Tr. 401-402). Shawnee testified that appellant later told her he shot Michael in self-defense. (Tr. 407).

**{¶19}** Mikhail testified that after they arrived at Shawnee's apartment, Michael and appellant were arguing outside. (Tr. 444). When appellant tried to go back into the apartment, Michael blocked his way. (Tr. 444-445). Appellant shoved Michael. (Tr. 447). Mikhail stated that Michael and appellant then started physically fighting. (Tr. 447). He saw Michael hitting appellant with his cane and appellant hitting Michael. (Tr. 448). Mikhail heard appellant tell him to get Michael "out of my face before I shoot him." (Tr. 471). Then he saw appellant shoot Michael. (Tr. 448).

**{¶20}** Youngstown Police Officer Mark Crissman photographed appellant later during the day on April 10, 2017. He testified that he did not observe any injuries to appellant's face. (Tr. 545). Officer Crissman stated that appellant had a number of small cuts and abrasions on both his right and left shins. (Tr. 545-546).

{¶21} Dr. Thomas Gilson is the medical examiner who performed the autopsy in this case. Dr. Gilson testified that one gunshot was to the side of Michael's head and the other was to his nose. (Tr. 615, 623). Neither was to the top of his head. (Tr. 634). Dr. Gilson also testified that, at the time of his death, Michael had a blood alcohol concentration of .171 and also had an antidepressant in his system. (Tr. 635).

{¶22} Youngstown Detective-Sergeant Ronald Rodway testified that appellant turned himself in approximately nine hours after the shooting. (Tr. 650). Detective-Sergeant Rodway also testified that when he interviewed Sophia she indicated that she "heard" two gunshots and then saw Michael fall to the ground, not that she "saw" the shooting. (Tr. 663). He also stated that when he interviewed Shawnee she described Michael as being "drunk and belligerent" that night. (Tr. 667).

{¶23} Finally, appellant testified in his defense. He stated that on the night in question, he and Shawnee got into an argument about her car. (Tr. 694-695). She locked herself in the bathroom and he went downstairs. (Tr. 695). Shortly thereafter, Shawnee came down and went outside. (Tr. 695). He got up to see what was going on and found Michael, drunk, standing on the porch by the front door. (Tr. 695-697). Shawnee tried to push Michael away. (Tr. 697).

{¶24} Appellant stated that he tried to go back in the apartment but Michael pushed him. (Tr. 698). Appellant pushed him back. (Tr. 698). Michael then hit appellant with his cane. (Tr. 698). Appellant testified that he fell to the ground and Michael continued beating him with his cane. (Tr. 698, 701). Appellant stated that he "balled up" on the ground while Michael was beating him. (Tr. 701). Appellant stated that he "feared for his life" and "had to defend himself." (Tr. 704). He stated he could not get up and shot twice from the ground. (Tr. 704). Appellant claimed he only "glanced" at where he was shooting. (Tr. 706). He stated he then stood up and was shocked so he ran. (Tr. 706). Appellant testified he never intended to kill Michael. (Tr. 708). His intent was to defend himself. (Tr. 709).

{¶25} On cross examination, appellant admitted that he knew Michael had some health problems and used a cane. (Tr. 712-713).

{¶26} The jury convicted appellant of murder in violation of R.C. 2903.02(A), which provides that no person shall purposely cause the death of another. The evidence

here clearly proved that appellant caused Michael's death. The only questions were whether he acted "purposely" and whether he acted in self-defense.

**{¶27}** A defendant acts purposely when it is his specific intention to cause a certain result. R.C. 2901.22(A). In this case, the jury did not lose its way in finding that appellant acted purposely.

**{¶28}** Mikhail testified that appellant told him to get Michael "out of my face before I shoot him." (Tr. 471). Then he saw appellant shoot Michael. (Tr. 448). And Shawnee testified that she too heard appellant tell Mikhail to get Michael "out of his face" before he killed him. (Tr. 396). These statements indicated that appellant's specific intention was to shoot Michael. Moreover, appellant deliberately removed a gun from his waistband and fired two shots while he was involved in a fight with Michael. Appellant's actions were those of a man acting to purposely shoot someone.

**{¶29}** Appellant claimed he acted in self-defense. The defense of self-defense through the use of deadly force has three elements: (1) the defendant was not at fault in creating the violent situation; (2) the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that the only means of escape was the use of such force; and (3) the defendant did not violate any duty to retreat or avoid the danger. *State v. Thomas*, 77 Ohio St.3d 323, 326, 1997-Ohio-269, 673 N.E.2d 1339 (1997). In order to support a claim of self-defense, the defendant must demonstrate that he acted out of fear or he felt that his life was threatened. *State v. Herron*, 2d Dist. Montgomery No. 28146, 2019-Ohio-3292, ¶ 42.

**{¶30}** The evidence indicated that both appellant and Michael were at fault for creating the situation. The evidence demonstrated that both men were arguing, both men pushed one another, Michael hit appellant with his cane, and appellant hit Michael. But the evidence does not support the idea that appellant had a bona fide belief that his only means to escape death or great bodily harm was the use of deadly force.

**{¶31}** Appellant testified that he "balled up" on the ground while Michael was beating him with his cane. (Tr. 701). Appellant further testified that he "feared for his life" and "had to defend himself." (Tr. 704). He claimed that he never intended to kill Michael but only meant to defend himself. (Tr. 708-709).

{¶32} But there was a significant amount of evidence to contradict appellant's testimony. Firstly, appellant knew that Michael was in poor health and required a cane to walk. Second, the other eyewitnesses testified that appellant was standing when he shot Michael as opposed to be being "balled up" on the ground. And third, police observed appellant just nine hours after the shooting. The only injuries observed on appellant were some minor scrapes and abrasions on his shins. Thus, the evidence did not demonstrate that appellant feared for his life such that his only means of escape was the use of deadly force.

{¶33} Moreover, there is a duty to retreat before using deadly force unless the person using such force is in his own home. *State v. Morris*, 7th Dist. Monroe No. 03 MO 12, 2014-Ohio-6810, ¶ 12; *City of Parma v. Treanor*, 8th Dist. Cuyahoga No. 106275, 2018-Ohio-3166, ¶ 29. Here, the evidence demonstrated that appellant could have retreated from Michael instead of shooting him. Michael was disabled and required a cane to walk. Appellant could have easily retreated from the affray but instead chose to fire his gun at Michael. Thus, appellant could have retreated to avoid being struck by Michael's cane.

{¶34} Appellant also argues that Sophia told Detective Rodway that she did not see the shooting; however, she described it in detail at trial. This matter would go to Sophia's credibility. And as stated above, witness credibility is a matter left to the jury.

{¶35} Based on the above evidence, we cannot conclude that the jury clearly lost its way in finding appellant guilty of murder.

{¶36} Accordingly, appellant's third assignment of error is without merit and is overruled.

{¶37} Appellant's first assignment of error states:

DEFICIENCIES IN THE TRIAL COURT'S INSTRUCTIONS TO THE JURY DEPRIVED APPELLANT OF DUE PROCESS AND FREEDOMS GUARANTEED UNDER THE OHIO CONSTITUTION AND CONSTITUTE PLAIN ERROR.

{¶38} Appellant asserts that in this case, voluntary manslaughter was an inferior-degree offense of murder, as opposed to a lesser included offense. Voluntary

manslaughter is an inferior degree of murder because its elements are identical to those of murder except for the additional mitigating element of serious provocation. In this case, appellant argues, the trial court erred by instructing the jury that it should consider the greater charge first and only consider the inferior-degree charge if it found appellant not guilty of the greater offense.

{¶39} The trial court instructed the jury as follows:

> If all of you are unable to agree on a verdict of either guilty or not guilty of the offense of murder, then you will continue your deliberations to decide whether the state has proved beyond a reasonable doubt all the essential elements of the inferior degree offense of voluntary manslaughter.
>
> * * *
>
> The defendant claims that at the time of the offense, the defendant acted knowingly while under the influence of sudden passion or a sudden fit of rage, either of which was brought on by serious provocation occasioned by Michael Brooks that was reasonably sufficient to incite the defendant into using deadly force, this is known as voluntary manslaughter.
>
> Before you can find the defendant guilty of voluntary manslaughter, you must find that the state has proved beyond a reasonable doubt that on or about April 20, 2017, in Mahoning County, Ohio, the defendant, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation, occasioned by the victim that it is reasonably sufficient to incite the person into using deadly force, knowingly causing the death of Michael Brooks.

(Tr. 819-820).

{¶40} Appellant contends these instructions were confusing to the jurors. He notes the court told the jurors that if they were unable to agree on a verdict for murder, they should then continue deliberations to decide whether the state proved all of the elements of voluntary manslaughter. But then, the court instructed the jurors:

If you find that the state proved beyond a reasonable doubt all of the essential elements of murder, you must separately decide whether the defendant proved by a greater weight of the evidence that he knowingly acted while under the influence of sudden passion or a sudden fit of rage, either of which was brought on by serious provocation occasioned by Michael Brooks that was reasonably sufficient to incite the defendant into using deadly force. However, if you find that the state failed to prove beyond a reasonable doubt all the essential elements of murder, then your verdict must be not guilty of that offense and you will not make that determination.

(Tr. 823).

{¶41}   Thus, appellant argues the court first told the jurors only to consider voluntary manslaughter if they could not agree on a verdict for murder. Then it told them to consider voluntary manslaughter only if they all agreed that the state met all of the elements of murder.   The two instructions, one correct and one incorrect, were inconsistent.

{¶42}   Moreover, appellant points out, the jurors were confused as evidenced by their question to the court.  The jury asked the court, "If we can't come to a verdict of 12 for murder, do we then debate voluntary manslaughter charge or do we debate until we are in agreement of one or the other?  Please clarify."  (Tr. 835).

{¶43}   Appellant did not object to the jury instructions at trial.  The failure to object to jury instructions waives all but plain error.  *State v. Palmer*, 7th Dist. Jefferson No. 04-JE-41, 2006-Ohio-749, ¶ 58.  Plain error is one in which but for the error, the outcome of the trial would have been different.  *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978).

{¶44}   A defendant is entitled to have the trial court give complete and accurate jury instructions on all the issues raised by the evidence.  *State v. Sneed*, 63 Ohio St.3d 3, 9, 584 N.E.2d 1160 (1992).  In examining the jury instructions we must review the court's charge as a whole, not in isolation, in determining whether the jury was properly instructed.  *State v. Burchfield*, 66 Ohio St.3d 261, 262, 611 N.E.2d 819 (1993).

{¶45}   In this case, while the court did give a conflicting instruction regarding when the jury was to consider a charge of voluntary manslaughter, no plain error resulted

because the jury could not have found appellant guilty of voluntary manslaughter under the facts of this case.

**{¶46}** The Eighth District has specifically held that instructions on both voluntary manslaughter and self-defense are erroneous because the two legal theories are incompatible. *State v. Jefferson*, 8th Dist. Cuyahoga No. 97331, 2012-Ohio-2387, 971 N.E.2d 469, ¶ 26. In support, the court noted that "[v]oluntary manslaughter requires that the defendant be under the influence of sudden passion or a fit of rage, while self-defense requires the defendant to be in fear for his own personal safety." *Id.*

**{¶47}** This court has refused to accept a steadfast rule to that effect but has stated that while "an instruction on voluntary manslaughter is generally incompatible with and contradictory to self-defense, there is no blanket rule holding the two theories inconsistent or contradictory." *State v. Stanley*, 7th Dist. Mahoning No. 14 MA 0106, 2016-Ohio-7284, ¶ 22. In *Stanley*, we went on to examine whether the defendant presented sufficient evidence at trial to support the elements of voluntary manslaughter.

**{¶48}** In analyzing the issue, we examined *State v. Platt*, 9th Dist. Wayne No. 18835, 1998 WL 887220 (Dec. 16, 1998). *Id.* at ¶ 29. We noted that in *Platt*, the victim allegedly threatened the defendant with a baseball bat. *Id.* At trial, the defendant testified that he shot the victim because he feared for his life. *Id.* The trial court refused to give an instruction on voluntary manslaughter based on the defendant's testimony that he shot the victim out of fear rather than anger or passion. *Id.* We pointed out that the Ninth District affirmed the trial court's ruling and held that the testimony produced at trial was only relevant to self-defense. *Id.*

**{¶49}** We then went on to find:

> This Court has previously acknowledged that "[f]ear is insufficient to demonstrate the emotional states of sudden passion or a fit of rage, and these latter emotional states are essential elements of the definition of voluntary manslaughter." *State v. Williams*, 7th Dist. No. 11 JE 7, 2012-Ohio-5256, ¶ 24.

> Appellant testified that he shot the victim because he feared that the victim would shoot and kill him. Consistent with the above-cited caselaw

and based on Appellant's testimony, he failed to establish that the evidence showed he acted pursuant to an emotional state of sudden passion or fit of rage. Instead, his testimony reflects self-defense.

*Id.* at ¶ 31-32.

**{¶50}** In this case too, appellant's testimony reflects self-defense as opposed to an emotional state of a sudden fit of rage.

**{¶51}** In describing the events leading up to the shooting, appellant testified that he fell to the ground as Michael beat him with his cane. (Tr. 698, 701). Appellant stated that he "balled up" on the ground while Michael was beating him. (Tr. 701). Appellant told the jury that he "feared for his life" and "had to defend himself." (Tr. 704). He stated he could not get up and shot twice from the ground. (Tr. 704). Noticeably absent from appellant's testimony is any indication that he acted in a sudden fit of rage.

**{¶52}** Thus, even if the trial court gave an erroneous instruction regarding voluntary manslaughter, no plain error exists because appellant's testimony described acting in self-defense as opposed to acting in a sudden fit of rage or passion.

**{¶53}** Appellant additionally, argues that trial court's instruction on self-defense was deficient. He claims the instruction should have, but failed to, instruct the jurors that evidence of self-defense, even if not established by a preponderance of the evidence, may be sufficient to create reasonable doubt about the defendant's guilt.

**{¶54}** While the trial court did not specifically state that evidence of self-defense may be sufficient to create reasonable doubt regarding defendant's guilt, the court specifically instructed the jurors several times to consider all of the evidence in reaching their verdict:

Reasonable doubt is present when, after you have carefully considered *all of the evidence*, you cannot say that you are firmly convinced of the truth of the charge.

\* \* \*

Evidence is *all* of the testimony received from the witnesses, the exhibits admitted during trial, facts stipulated to or agreed to by counsel, and any facts which the court requires you to accept as true.

\* \* \*

It is your duty to carefully weigh the evidence, to decide all disputed questions of fact, to apply the instructions of the court to your findings, and to render your verdict accordingly. \* \* \* *Consider all the evidence*[.]"

(Emphasis added; Tr. 803-804; 830).

**{¶55}** Given the court's repeated instructions to consider all of the evidence, the jury would have considered appellant's testimony regarding his claim of self-defense when determining his guilt. The trial court did not commit plain error by failing to separately instruct the jury to consider appellant's evidence of self-defense.

**{¶56}** Accordingly, appellant's first assignment of error is without merit and is overruled.

**{¶57}** Appellant's second assignment of error states:

A MAXIMUM SENTENCE FOR HAVING WEAPONS UNDER A DISABILITY, IMPOSED CONSECUTIVELY TO A LIFE SENTENCE, DENIES DUE PROCESS AND THE RIGHT TO REMAIN FREE FROM CRUEL AND UNUSUAL PUNISHMENTS.

**{¶58}** Here appellant contends the trial court erred by sentencing him to the maximum sentence for having weapons under disability and by ordering him to serve that sentence consecutive to his life sentence. Appellant acknowledges that the trial court made the statutorily-required findings for sentencing him to consecutive sentences. But he urges this court to require more from sentencing courts when it comes to maximum and consecutive sentences. He asks us to require sentencing courts to give reasons supporting those findings. He then asserts that we are to review his sentence for abuse of discretion.

**{¶59}** First, it must be noted that we no longer apply an abuse of discretion standard when reviewing felony sentences. When reviewing a felony sentence, an

Case No. 18 MA 0094

appellate court must uphold the sentence unless the evidence clearly and convincingly does not support the trial court's findings under the applicable sentencing statutes or the sentence is otherwise contrary to law. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231 ¶ 1. Thus, "appellate courts may not apply the abuse-of-discretion standard in sentencing-term challenges." *Id.* at ¶ 10.

{¶60} In this case, the trial court sentenced appellant to 15 years to life for murder, three years for the firearm specification, and three years for having weapons under disability.

{¶61} The 15-years-to-life sentence on the murder conviction was mandatory. R.C. 2929.02(B)(1). Likewise, the three-year sentence on the firearm specification was mandatory. R.C. 2929.14(B)(1)(a)(ii). The possible sentences for the having weapons under disability were nine, twelve, eighteen, twenty-four, thirty, or thirty-six months. R.C. 2929.14(A)(3)(b). The trial court selected the maximum 36-month term. Thus, each of appellant's sentences was consistent with the applicable sentencing statute.

{¶62} In sentencing a felony offender, the court must consider the overriding principles and purposes set out in R.C. 2929.11, which are to protect the public from future crime by the offender and others and to punish the offender. The trial court shall also consider various seriousness and recidivism factors as set out in R.C. 2929.12(B)(C)(D)(E). The trial court indicated both at the hearing and again in its judgment entry that it considered both the principles and purposes of sentencing and the seriousness and recidivism factors. (Sentencing Tr. 13-14). The court did not elaborate on its findings regarding these factors, but it was not required to do so. "[N]either R.C. 2929.11 nor R.C. 2929.12 requires the sentencing court to make specific findings regarding the purposes and principles of sentencing, or seriousness and recidivism factors at the sentencing hearing or in the sentencing judgment entry." *State v. Taylor*, 7th Dist. Mahoning No. 15 MA 0078, 2016-Ohio-1065, ¶ 14, citing *State v. Henry*, 7th Dist. Belmont No. 14 BE 40, 2015-Ohio-4145, ¶ 22, *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 31, and *State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000).

{¶63} The trial court sentenced appellant to a maximum sentence for having weapons under disability. But although the General Assembly has reenacted the judicial

fact-finding requirement for consecutive sentences, it has not revived the requirement for maximum sentences. *State v. Riley*, 7th Dist. Mahoning No. 13 MA 180, 2015-Ohio-94, ¶ 34. Therefore, the trial court was not required to make any special findings before sentencing appellant to a maximum sentence.

**{¶64}** Appellant acknowledges that the trial court made the findings required to sentence him to consecutive sentences. (Sentencing Tr. 15-16). But he now asks us to require sentencing courts to give reasons supporting those findings. This is not something this court can do.

**{¶65}** R.C. 2929.14(C)(4) requires a trial court to make specific findings when imposing consecutive sentences:

> (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

Nothing in the statute requires the trial court to give reasons for its findings.

{¶66} In discussing the legislature's requirements in the consecutive-sentencing-findings statute, the Ohio Supreme Court has stated:

> Notably, however, rather than also reviving the language of former R.C. 2929.19(B)(2), which we severed in *Foster*, the General Assembly repealed that language and eliminated the substantive requirement for a court to give reasons for imposing consecutive sentences. We recognize that some statutes require a trial court to give reasons in support of its findings, e.g., R.C. 2929.03(F) and 2929.19(D), but no statute directs a sentencing court to give or state reasons supporting imposition of consecutive sentences. Thus, a trial court is not required by Crim.R. 32(A)(4) to give reasons supporting its decision to impose consecutive sentences.

*State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 27.

{¶67} Neither the statute itself nor the Ohio Supreme Court require a sentencing court to give reasons in support of its consecutive-sentence findings. Thus, this court is not in a position to require the trial court to give such reasons.

{¶68} In sum, there is no indication that the evidence clearly and convincingly does not support the trial court's findings under the applicable sentencing statutes. Moreover, the sentence is not contrary to law. Therefore, we must uphold appellant's sentence.

{¶69} Accordingly, appellant's second assignment of error is without merit and is overruled.

{¶70} For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, P. J., concurs.

Robb, J., concurs.

Case No. 18 MA 0094

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**