[Cite as *State v. Van Voorhis*, 2024-Ohio-1898.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29844 |
| | : | |
| v. | : | Trial Court Case No. 2022 CR 02415 |
| | : | |
| JEREMY VAN VOORHIS | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on May 17, 2024

. . . . . . . . . . .

ROBERT ALAN BRENNER, Attorney for Appellant

MATHIAS H. HECK, JR., by SARAH H. CHANEY, Attorney for Appellee

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Jeremy Van Voorhis appeals from his conviction on charges of murder, gross abuse of a corpse, evidence tampering, and a firearm specification.

{¶ 2} Van Voorhis contends a guilty verdict on the murder charge was against the weight of the evidence because he acted in self-defense when shooting and killing the victim. He argues that the trial court erred in denying a mistrial when the State introduced

suppressed evidence during his cross-examination. He asserts that introduction of this evidence deprived him of a fair trial and due process. Finally, he claims the trial court erred in not giving a voluntary-manslaughter instruction.

{¶ 3} We conclude that the jury's rejection of Van Voorhis' self-defense claim was not against the weight of the evidence. The trial court also did not err in denying a mistrial based on the State's introduction of suppressed evidence, and the State's use of the evidence did not violate his rights. Finally, the trial court properly denied his request for a voluntary-manslaughter instruction. Accordingly, the trial court's judgment will be affirmed.

## I. Background

{¶ 4} A grand jury indicted Van Voorhis on two counts of murder, two counts of felonious assault, gross abuse of a corpse, evidence tampering, and related firearm specifications. The charges involved Van Voorhis' allegedly shooting and killing the victim, Clinton Pierce, concealing Pierce's body in a garage, disposing of Pierce's cell phone, and tossing the murder weapon from a car window during a police chase.

{¶ 5} In response to a suppression motion, the trial court suppressed a statement Van Voorhis had made while in custody and prior to the administration of *Miranda* warnings. When asked by a detective whether he wanted to "talk with us, give us your side of the story," Van Voorhis responded, "I do, but I didn't do this." The trial court concluded that this response was inadmissible because it was the product of custodial interrogation in violation of *Miranda*.

{¶ 6} The case proceeded to trial in March 2023. The evidence established that

Van Voorhis and Pierce were friends who worked together installing flooring. They used a detached garage at Van Voorhis' house on Burkhardt Road to store their materials. On July 15, 2022, Pierce cashed a check for $1,960.36 for a flooring job. Later that day, the two men went to Van Voorhis' garage to get a roll of carpet. While they were in the garage, Van Voorhis admittedly shot Pierce in the back of the head with a handgun. He then took Pierce's money and hid his body by covering it with layers of carpet.

{¶ 7} Following the shooting, Van Voorhis lied to several people regarding Pierce's whereabouts. He also used Pierce's cell phone and responded to a text message as if he were Pierce. The cell phone later was discovered in a casino parking lot. Approximately one month after Pierce's disappearance, his girlfriend and others discovered his decomposed body in Van Voorhis' garage after smelling an odor. Pierce's skull had a bullet hole in it. The entrance wound was in the back of the skull. In addition to Pierce's body, police found a carpet knife and a box cutter next to a pile of blood. They found a spent .40 caliber shell casing under the carpet. They also found a receipt dated July 15, 2022 at 11:42 a.m. for $1,960.36. No money or firearm was found at the crime scene.

{¶ 8} Police eventually located Van Voorhis in Lima, Ohio. A deputy attempted to stop Van Voorhis' vehicle using lights, sirens, and an air horn. Van Voorhis responded by accelerating and leading police on a 45-minute pursuit that reached a speed of 115 miles per hour. During the pursuit, Van Voorhis threw the murder weapon out of his car window. Police arrested him at the conclusion of the pursuit.

{¶ 9} The only real issue at trial was whether Van Voorhis had killed Pierce in self-defense. Van Voorhis testified on his own behalf and admitted shooting and killing Pierce.

He claimed that Pierce had started slacking off at work and had been using drugs and alcohol. He also asserted that Pierce had been cheating him financially. With regard to events leading up to the shooting, Van Voorhis testified that he had asked Pierce for his half of the cashed check while in the garage. Pierce responded by giving him only $200 and telling him he would have to wait for the rest. Van Voorhis testified that he became "irate" and accused Pierce of acting like a "dope fiend." According to Van Voorhis, Pierce responded by throwing a punch and then swinging a carpet knife at him. Pierce's act of swinging the knife caused Van Voorhis to fear for his life.

{¶ 10} Van Voorhis claimed that Pierce tripped over carpet, lost his footing, and spun around when he swiped with the knife. In response to Pierce assaulting him with a carpet knife, Van Voorhis pulled a handgun that he was carrying and fired it at Pierce. Van Voorhis explained that he was on top of carpet, had lost his own footing, and was falling backward when he fired the shot that struck Pierce in the back of the head. He claimed that he concealed the body, lied about what had happened to Pierce, and did not report the incident because he was unaware of Ohio's self-defense law.

{¶ 11} On cross-examination, Van Voorhis acknowledged lying to people, including the police, and telling different stories about what had happened to Pierce. He testified that he discarded the murder weapon during the police chase only because he feared getting shot when he stopped. The following exchange then occurred between the prosecutor and Van Voorhis:

Q. And when you talk[ed] to Det. House after that police chase, your words are, I didn't do it.

A. Yeah.

Q. Now, at that time, you knew you had done it, right?

A. Knew what?

Q. You knew you had done it?

A. Yes.

Trial Transcript Vol. IV at 908-909.

{¶ 12} Defense counsel objected to this questioning on the basis that Van Voorhis' statement to the detective had been suppressed. After hearing from respective counsel, the trial court overruled the objection.

{¶ 13} In opposition to Van Voorhis' self-defense claim, the State relied in part on testimony from Shawn Connelly, his longtime friend. Connelly testified that the two men had known each other for approximately 15 years and that he considered Van Voorhis to be like a brother. According to Connelly, Van Voorhis contacted him about becoming a flooring partner after Pierce was shot. Van Voorhis initially told Connelly that Pierce simply had disappeared. Van Voorhis then suggested that "dope guys" might have gotten him. Van Voorhis told Connelly that he had nothing to do with the disappearance. At one point, however, Van Voorhis asked Connelly to help move some carpet in his garage. Van Voorhis warned Connelly that there would be a "distinctive odor," adding that Connelly would know what it was. Ultimately, Connelly never helped Van Voorhis move the carpet.

{¶ 14} Shortly before his arrest, Van Voorhis showed up at Connelly's house in "kind of a panic." Van Voorhis revealed that police had found Pierce's body in his garage. According to Connelly, Van Voorhis explained that he and Pierce had gotten into a dispute about money. Van Voorhis then told Connelly, "I just snapped." Connelly testified that Van

Voorhis told him the financial dispute involved the division of roughly $50,000 to $60,000. Van Voorhis also told Connelly that he wanted to get rid of a gun. Van Voorhis mentioned the possibility of placing the gun in a magnetic metal box and affixing it to the underside of the "dope boys'" car and then calling the police to help them locate the weapon. On cross-examination, Connelly admitted being unsure about the amount of money at issue in the financial dispute between Van Voorhis and Pierce. Connelly acknowledged that Van Voorhis might have told him the amount was $20,000 or $30,000. Whatever the amount, Connelly recalled that it was a substantial figure.

{¶ 15} The jury also heard a recording of a jailhouse phone conversation between Van Voorhis and Connelly after Van Voorhis' arrest. During the conversation, Van Voorhis stated, "I got rid of it on the ride" and "now they've got no evidence." Connelly understood Van Voorhis to be referring to the murder weapon that he tossed from his vehicle during the police pursuit.

{¶ 16} Following the presentation of evidence, the trial court instructed the jury on self-defense but declined to give a requested instruction on voluntary manslaughter. The jury returned guilty verdicts on all charges. After merging allied offenses of similar import, the trial court imposed an aggregate sentence of 22 years to life in prison for murder, gross abuse of a corpse, and evidence tampering. Van Voorhis timely appealed, advancing four assignments of error.

## II. Analysis

{¶ 17} The first assignment of error states:

I. VAN VOORHIS'S CONVICTIONS IN COUNTS I, II, III, AND IV ARE

AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 18} Van Voorhis contends the jury's guilty verdicts on the two counts of murder and two counts of felonious assault were against the weight of the evidence because the record supported a finding that he acted in self-defense.

{¶ 19} The self-defense claim hinged on Van Voorhis' testimony that he feared for his life when Pierce swung a carpet knife at him. Although he shot Pierce in the back of the head, he claims this occurred only because Pierce lost his footing and spun around. Van Voorhis also cites his testimony that he concealed the crime and lied about it because he was unfamiliar with self-defense law.

{¶ 20} The trial court's provision of a jury instruction regarding self-defense means it believed Van Voorhis had put forward sufficient evidence of acting in self-defense when he shot and killed Pierce. *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653, ¶ 26. Therefore, the State bore the burden of persuasion to disprove at least one element of self-defense beyond a reasonable doubt. *State v. Bowen*, 2d Dist. Montgomery No. 29833, 2024-Ohio-1079, ¶ 12. The jury's guilty verdict means it found that the State had met its burden of proof that Van Voorhis did not act in self-defense. *Messenger* at ¶ 26. A manifest-weight-of-the-evidence standard of review applies to our examination of whether the State in fact met this burden. *Id.*

{¶ 21} When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such

a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 22} As relevant here, the elements of Van Voorhis' self-defense claim included (1) that he was not at fault in creating the situation giving rise to the affray and (2) that he had a bona fide belief that he was in imminent danger of death or great bodily harm. *State v. Knuff*, Ohio Slip Opinion No. 2024-Ohio-902, __ N.E.3d __, ¶ 191. Van Voorhis' version of events supported a finding in his favor on those issues, which is why he was entitled to a self-defense instruction. The State correctly notes, however, that the jury was not required to believe Van Voorhis' testimony. "The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997).

{¶ 23} In contrast to Van Voorhis' testimony, the State claimed that he became angry with Pierce during a dispute over money. The State's position was that Van Voorhis "just snapped" and shot Pierce in the back of the head before taking cash from Pierce's pockets, concealing his body, and telling lies about what had occurred. The State's theory about Van Voorhis shooting Pierce during a financial dispute was supported by Connelly's testimony. Although Van Voorhis suggested that he "snapped" by speaking harshly to Pierce, the jury reasonably could have determined that the "snapped" comment pertained

to his shooting Pierce. The jury also reasonably could have found Van Voorhis' testimony not credible insofar as he claimed that while falling backward to avoid a carpet knife he successfully pulled a firearm and fired a single shot that happened to hit Pierce in the back of the head because Pierce also was falling and spinning when the bullet struck.

{¶ 24} In short, the evidence supported a finding beyond a reasonable doubt that Van Voorhis did not act in self-defense when he shot and killed Pierce. This is not an exceptional case in which the evidence weighed heavily against the jury's verdicts. Accordingly, the first assignment of error is overruled.

{¶ 25} Van Voorhis' second and fourth assignments of error state:

II. THE TRIAL COURT ERRED WHEN IT DENIED VAN VOORHIS'S MOTION FOR A MISTRIAL.

IV. VAN VOORHIS WAS DENIED A FAIR TRIAL AND DUE PROCESS OF LAW UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION WHEN THE STATE INTRODUCED A SUPPRESSED STATEMENT TO THE JURY.

{¶ 26} These related assignments of error address the State's cross-examination of Van Voorhis about his statement to a detective that he "didn't do this." As noted above, the trial court suppressed the statement in a pretrial ruling, concluding that it had been obtained in violation of *Miranda*. Van Voorhis contends the trial court was obligated to grant him a mistrial because the State's introduction of the suppressed statement deprived him of a fair trial and violated due process.

{¶ 27} "Whether suppressed statements of a defendant may be used for cross-examination depends upon the reason for the suppression of those statements." *State v. Fair*, 2d Dist. Montgomery No. 24388, 2011-Ohio-4454, ¶ 55. "Under *Harris v. New York* (1971), 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1, the state can use an accused's voluntary, but un-*Mirandized* statement, to impeach trial testimony." *State v. Hill*, 75 Ohio St.3d 195, 207, 661 N.E.2d 1068 (1996). *Miranda's* protections do not free a defendant "from the risk of confrontation with prior inconsistent utterances." *Harris* at 226. Therefore, a defendant's credibility may be impeached "by use of his earlier conflicting statements" even if they were obtained in violation of *Miranda*. *Id*.

{¶ 28} Van Voorhis does not dispute the foregoing law. Nor does he claim he made the disputed statement involuntarily. Indeed, nothing in the suppression-hearing transcript suggests that Van Voorhis' statement was the product of police coercion. The detective simply obtained it in the absence of *Miranda* warnings. Van Voorhis' only argument is that the State could not use the suppressed statement for impeachment because there was nothing in his trial testimony to impeach.

{¶ 29} We find Van Voorhis' argument to be unpersuasive. In a more typical case, a defendant makes incriminating pretrial statements and then at trial denies having engaged in unlawful conduct. In that situation, the incriminating prior inconsistent statements are used to impeach the defendant's exculpatory trial testimony. In a way, the present case turns that scenario on its head. Following his arrest, Van Voorhis told a detective that he "didn't do this." At trial, however, Van Voorhis testified, in essence, that he "did do this" but that he did it in self-defense. This aspect of his testimony conflicted

with his earlier statement to the detective, making the earlier statement a prior inconsistent one. Therefore, the trial court properly admitted Van Voorhis' statement to the detective as it went to the credibility of his trial testimony. *State v. McClain*, 1st Dist. Butler Nos. CA76-05-0044, CA76-05-0052, 1977 WL 199682, *3-4 (June 22, 1977) (allowing defendant's impeachment with his suppressed statement to a police officer that he had not been involved in a killing where defendant testified at trial and claimed that he had killed the victim in self-defense).

{¶ 30} Finally, we note too that Van Voorhis could not have been prejudiced by the State's use of his statement to the detective. On both direct and cross-examination, he acknowledged telling several other people that he had not been involved in Pierce's disappearance and making up stories about what had happened. The fact that he made a similar denial to the detective added little to the State's case.

{¶ 31} For the foregoing reasons, the second and fourth assignments of error are overruled.

{¶ 32} Van Voorhis' third assignment of error states:

III. THE TRIAL COURT ERRED WHEN IT FAILED TO INSTUCT THE JURY ON VOLUNTARY MANSLAUGHTER.

{¶ 33} Van Voorhis contends the trial court erred in denying him a requested jury instruction on voluntary manslaughter. Citing his testimony about Pierce trying to cut him with a carpet knife, he argues that he feared for his life and that his passions were aroused beyond his ability to control them. Therefore, he asserts that the requested instruction was warranted.

**{¶ 34}** In deciding whether to provide an inferior-offense instruction, a trial court must find sufficient evidence to allow a jury reasonably to reject the greater offense and to find the defendant guilty on an inferior-degree offense. *State v. Ferrell*, 2020-Ohio-6879, 165 N.E.3d 743, ¶ 35 (10th Dist.). When the evidence pertaining to an inferior-degree offense meets this test, a trial court must instruct the jury on it. *State v. Conley*, 2015-Ohio-2553, 43 N.E.3d 775, ¶ 32 (2d Dist.).

**{¶ 35}** Here the trial court did not err in refusing to instruct the jury on voluntary manslaughter. We have recognized that voluntary manslaughter is an inferior-degree offense to murder because it requires proof of an additional mitigating element: that the defendant acted under the influence of sudden passion or in a fit of rage brought about by serious provocation. *State v. Dixon*, 2d Dist. Greene No. 2021-CA-29, 2022-Ohio-3157, ¶ 21. "The test for whether a serious provocation occurred and whether a defendant acted under the influence of sudden passion or in a fit of rage includes objective and subjective components. * * * The provocation must be sufficient to arouse an ordinary person beyond the power of his control, and the defendant in fact must have acted under the influence of sudden passion or in a fit of rage." *Id.*

**{¶ 36}** "[A] self-defense argument generally is inconsistent with a serious-provocation theory." *Id.* at ¶ 22, citing *State v. Brown*, 2d Dist. Montgomery No. 27738, 2018-Ohio-3068, ¶ 47 (citing cases). This is so because self-defense is grounded in fear whereas voluntary manslaughter is grounded in a different emotion, a fit of passion or rage. *State v. Williamson*, 8th Dist. Cuyahoga No. 95732, 2011-Ohio-4095, ¶ 36. A potential exception exists where a defendant exceeds the amount of force necessary to

defend himself because he acted out of passion or rage. *Dixon* at ¶ 22.

**{¶ 37}** At trial, Van Voorhis testified that he feared for his life and was "scared" when he shot Pierce in response to being attacked with a carpet knife. He also asserted that he did not want to kill Pierce "at all." However, " 'fear is insufficient to demonstrate the emotional states of sudden passion or a fit of rage.' " *State v. Ramey*, 2d Dist. Montgomery No. 27636, 2018-Ohio-3072, ¶ 36, quoting *State v. Williams*, 7th Dist. Jefferson No. 11 JE 7, 2012-Ohio-5256, ¶ 24.

**{¶ 38}** Van Voorhis did claim to have been "irate" when accusing Pierce of underpaying him and being a "dope fiend." But Van Voorhis did not profess to have killed Pierce for these reasons. In addition, being a dope fiend and cheating Van Voorhis out of money objectively would be insufficient provocations to arouse an ordinary person beyond his power of control. The only serious provocation that Van Voorhis alleged was Pierce's act of swinging a carpet knife at him, and Van Voorhis' professed reaction to that act was fear, not passion or rage. We find nothing in his testimony to support a finding that his firing of the gun was attributable to sudden passion or a fit of rage. As a result, the trial court correctly refused to instruct the jury on voluntary manslaughter. The third assignment of error is overruled.

### III. Conclusion

**{¶ 39}** The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and LEWIS, J., concur.